Viola M. Barr, p. a.
vs.    No.60713.
Eva Fales
January 21, 1926

BLODGETT, J. Heard upon motion for new trial filed by defendant after verdict of a jury for the plaintiff for $4000

The case arises from an automobile collision at the intersection of the South Ferry road with the State road, best known as the Narragansett Pier

road, June 8, 1924, about 4 p. m., not far south of Saunderstown.

The plaintiff, a young girl, fifteen years of age, was seated in the rear seat of the sedan driven by her father. Her mother sat upon the front seat beside her father. On the seat beside her sat the family dog and a young sister. Mr. Barr was taking the family to inspect a house recently purchased near South Ferry. It was a family errand in which all were interested.

A civil engineer testifying for plaintiff describes the location: The width of one hard portion of the Pier road is 18 feet; that on either side of this hand portion is a shoulder of dirt four feet in width; that the entire width is traversable for vehicles; that the north end of a house on the west side of the Pier road is 131 feet south of the south side of the South Ferry road; that there is a billboard on the southwest corner of the Ferry road, the southwest intersection; that the billboard is about 15 feet high; that the end of this billboard is about 25 feet from the Pier road and is about 40 feet in length; that the traveled portion of the South Ferry road is 14 feet wide; that a sharp pitch leads from the edge of the South Ferry road.

Mr. Barr, the driver, says: "I came very slowly to the Pier road, in fact almost came to a stop." Further, that one can not see the Pier road south until one gets to it on account of the billboard; that when he reached the corner he looked and saw a machine quite a ways down the road; that it (the machine) was so far down the road that he immediately forgot all about it; that there was crushed stone on the edge of the Pier road which attracted his attention and that he simply took his time and went across; that just about as the wheels cleared the macadam, he heard a s-s-s-h and then there was a bang;

that he received no warning of any kind.

It is evident that the driver after the first look and sight of the coming machine claims he proceeded slowly across and paid no further attention to the on-coming car.

Viola M. Barr says the only thing she remembers is slowing down and going across; that she did not look.

The account given by defendant is entirely different. She testifies to proceeding along the Pier road toward Providence at a speed of about 20 miles an hour; that the road was slippery and it was raining; that she slowed down as she approached the corner, it being a blind corner on account of the billboard; that as she reached the corner the car driven by Mr. Barr came from the left very fast; that she tried to go around him to the left.

Amasa S. Johnson, who occupied the house mentioned on the west side of the Pier road, testified as to location of the cars after the collision.

Frank Dakin testified for defendant as follows: That he saw defendant's car just prior to the collision on the right side of the Pier road going about 10 miles an hour; that at this time the Barr car was approaching on the Ferry road; that both cars covered the same distance in approaching the intersection; that he was going up the steps of the house on the west side of the Pier road when he saw the two cars both approaching the intersection and that he was inside the house when he heard the noise of the collision; that he was half way across the yard when the Barr car passed by him; that when he went up the steps the Barr car was between him and the corner.

The defendant had the right of way and if the testimony of this witness is believed, that at the time he observed the two cars approaching the intersection they were about the same distance respectively from said inter-

section, it was the duty of Mr. Barr to yield the right of way to the defendant.

The only witness who testifies as to location of the two cars with reference to the intersection before the collision, other than the persons in the respective cars, is this last witness. The other witnesses testify chiefly as to the location of the same after the collision.

It seems incredible that the collision could have happened as described by Mr. Barr, viz: that he looked down the Pier road and saw the car of defendant at least two hundred feet below the house on the west side, which he places as 150 or 200 feet from the Ferry road. That is, while he, Barr, was covering twenty odd feet, the defendant covered between 300 and 400 feet and struck him. If he, Barr, were going as slowly as four miles an hour, the defendant would have to go somewhere in the neighborhood of 80 miles an hour for the entire distance that separated them.

The use of the right of way has been described in certain decisions as a matter of "mutual forbearance." Each driver of cars approaching an intersecting street is obliged to use due care. Whether or not such due care was exercised is a question for the jury to determine. The manner in which the car driven by Barr was struck would seem to show that this car had nearly passed over the hard part of the road. Taking all the testimony into consideration the jury must determine whether the defendant was guilty of any negligence. The fact, if so determined, that Barr had nearly got across would be consistent with the account given by defendant as well as that given by Barr. It would depend upon the speed of Barr's car. If he were proceeding slowly, he reached the intersection first. If, as described by defendant, he shot by the corner, then the jury might well say the defendant was guilty of no negligence. From the testimony of the witness Dakin, the jury might well have found Barr guilty of contributory negligence. He is the only disinterested witness to describe the location of the two cars as they approached the intersection.

Whether or not any contributory negligence of Barr could be chargeable to plaintiff was submitted to the jury under certain instructions by the court.

The testimony of plaintiff discloses that she paid absolutely no attention to what was going on and saw nothing until the crash came. The jury by the verdict have justified the course taken by her. The testimony of the driver shows only a casual glance.

It is a close question whether or not the verdict should be sustained upon this point. It must be determined by the peculiar circumstances surrounding each case.

See 234 Mass. 95; 119 Atl. 543.

In the present case plaintiff was seated in the rear seat of a closed car with her younger sister and a dog, paying no attention to the driving of the car. Her father was driving. Had she looked for danger, she would have seen exactly what her father looked and saw. What could she have done that would have helped to avoid the danger?

The court can not say the jury were wrong upon this phase of the case.

The amount of the verdict seems grossly excessive. The plaintiff at the time of the trial seemed bright and intelligent and the mark left by the injury not repulsive. Dr. Darby testified that she had made a good recovery but will be scarred by that mark maybe as long as she lives; that in time some of it may fade.

Motion for new trial granted unless the plaintiff within four days after the filing of this decision file a remittitur of all of said verdict in excess of two thousand dollars.

For Plaintiff: Sherwood, Heltzen & Clifford.

For Defendant: Hinckley, Allen. Tillinghast & Phillips.